UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SANCHAZ DEMOND HAROLD | * | CIVIL ACTION |
| VERSUS | * | NO. 20-2220 |
| TANGIPAHOA PARISH SHERIFF OFFICE, ET AL. | * | SECTION "E" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Sanchaz Demond Harold filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Defendants Tangipahoa Parish Sheriff's Office ("TPSO") and Assistant Warden/Lieutenant Richard Chatman and Deputy Charles Brock based on allegations that nine days he spent locked in a special holding tank in Tangipahoa Parish prison constituted cruel and unusual punishment under the Eighth Amendment. *See* ECF No. 1. In his Amended Complaint, he added Assistant Warden/Lieutenant Chetry Brown, Warden/Captain Heithe Martin, Nurse in charge on 8/19/19, and Nurse Shay (ECF No. 23; *see also* No. 9) and identified Lt. Latoya Williams during his *Spears* hearing. This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. L.R. 73.2(A). Also pending before the Magistrate Judge on referral are Tangipahoa Parish Sheriff Office's Motions to Dismiss (ECF Nos. 27; 31) and Plaintiff's Motion to Amend Complaint to replace Tangipahoa Parish Sheriff's Office with Tangipahoa Parish Jail (ECF No. 32) and to add Lieutenant Sherty Brown, Captain Heith Martin, Lieutenant Richard Chatman and Deputy Charles Brock as defendants (ECF No. 33).

Having considered the record, including Plaintiff's original and amended complaint, his § 1983 Fact Statement, *Spears* hearing testimony, medical records, and the applicable law, the

undersigned recommends that Plaintiff's excessive force claim against Deputy Charles Brock and Plaintiff's Eighth Amendment conditions of confinement claim against the Tangipahoa Parish Sheriff's Office, Warden Heithe Martin, Lt. Chetry Brown, Deputy Charles Brock, Lieutenant Richard Chatman, Nurse Shay, and unidentified nurse be DISMISSED.

Additionally, Plaintiff's Motion to Amend (ECF No. 32) his complaint to add the Tangipahoa Parish Jail in place of Tangipahoa Parish Sheriff's Office is DENIED as futile, and Plaintiff's Motion to Amend (ECF No. 33) his complaint and add additional defendants is DENIED as moot. Defendant's Motions to Dismiss (ECF Nos. 27; 31) the Tangipahoa Parish Sheriff's Office are GRANTED.

## I.  **BACKGROUND**

### A.  **Allegations in the Original and October 20, 2020 Amended Complaint and § 1983 Fact Statement**

Plaintiff Harold was incarcerated at the Rayburn Correctional Center (ECF No. 1, at 3) when he filed his original complaint; however, the incidents leading to his complaint occurred at the Tangipahoa Parish prison. ECF Nos. 1, at 2; *see* 9, at 2. In his original complaint, he names as defendants the Tangipahoa Parish Sheriff's Office ("TPSO"), Assistant Warden and Lieutenant Richard Chatman ("Lt. Chatman"), and Deputy Charles Brock ("Deputy Brock"). ECF No. 1, at 3. Harold later amended his complaint to add Warden/Captain Heithe Martin ("Capt. Martin"), Assistant Warden/Lieutenant Chetry (sometimes spelled Shetry or Sherty Brown ("Lt. Brown")), a nurse in charge on 8/19/19, and Nurse Shay. ECF No. 23, at 2. He also seeks leave to amend to substitute the Tangipahoa Parish Jail in place of Tangipahoa Parish Sheriff's Office (ECF No. 32) and to add Assistant Warden/Lieutenant Sherty Brown, Warden/Captain Heith Martin, Assistant Warden/Lieutenant Richard Chatman and Deputy Charles Brock (ECF No. 33).

### 1. Events in August 2019

Harold alleges that from August 19, 2019 to August 28, 2019 (i.e., nine (9) days), he was locked in a 6'x6' (later referred to as 6'x5' and also 5'x5') special holding cell, Hold Tank E-17 ("HTE-17"). ECF Nos. 1, at 4; 23, at 1. For the first three days, Harold was placed with a suicidal inmate, while Harold himself was homicidal. ECF No. 1, at 5. For the last six days, Harold was with five suicidal inmates. *Id.* Harold describes the environment of HTE-17 as lacking ventilation since it was completely closed off with brick walls and steel doors. ECF No. 23, at 1. The tank did not contain a toilet, other than a hole in the floor which had feces and urine "all over the floor around this hole" and "all over bars that covered such hole." *Id.* Harold states that these conditions placed him in "fear of getting other feces and urine on him [when he used the hole as a toilet] and risk possibly contracting bacteria or disease," causing Harold to "urinate[] in the small Styrofoam cups that was given to him with his meals and then pour[] such in this hole in the floor." *Id.* Harold did not defecate for nine days as there was "a lack of space to conduct such methods properly." *Id.* The tank smelled like urine and feces for 12-hour periods since the button to flush the hole was located on the outside of the cell, and guards only flushed it at 6 a.m. and 6 p.m. ECF No. 1, at 3. Harold complained of the "toxic" fumes from other inmates' excrement since the hole was flushed only twice a day, and the tank did not have adequate ventilation. ECF No. 23, at 1.

Harold also alleges he was deprived of adequate drinking water and only provided three "small" cups of water a day with his meals. ECF Nos. 1, at 4; 23, at 1. He Throughout the nine days, Harold did not have a mattress and slept in a sitting position due to a lack of space. *Id.* He states that the temperature was freezing cold at night, and he was given a "turtle suit" which was sleeveless and short. ECF No. 1, at 4.

Harold alleges on August 27, 2019 at 12:30 a.m., Deputy Charles Brock choked, punched, and sprayed him in response to Harold's request to be moved from HTE-17. *Id.* at 6. Harold states he told Deputy Brock it was "unhumane" for him to be in HTE-17. *Id.* At this time, Deputy Brock pushed another inmate who was trying to exit the cell and instructed Harold to come to him. *Id.* When Harold approached Deputy Brock, the Deputy grabbed Harold and placed him in a chokehold where Harold could not breath. *Id.* Harold describes the Deputy saying, "Oh you blind [ ] you want to resist me." *Id.* Harold grabbed the Deputy's arm to try to loosen the Deputy's grip around his neck. *Id.* After releasing Harold, Deputy Brock punched him on the left side of his face, causing Harold to fall to the ground. *Id.* As Harold fell, Harold struck Deputy Brock with a closed fist in the face and grabbed the Deputy, pulling him to the ground. *Id.* Deputy Brock fell on top of Harold and began to spray Harold in the face with chemical spray. *Id.* Another official eventually entered the cell and held Harold down while Deputy Brock continued to spray chemical spray into Harold's face. *Id.*

Harold also claims that on August 28, 2019, Lt. Richard Chatman, even after having seen footage of the altercation, allowed Deputy Charles Brock to escort Harold from the Tangipahoa Parish prison to Hunt Correctional Center. *Id.* Deputy Brock allegedly made multiple verbal threats to Harold's relatives during the transport. *Id.*

As to other Defendants, Harold claims Capt. Heithe Martin made multiple rounds while Harold was confined in HTE-17, Harold spoke with him while in HTE-17 on two occasions where Harold tried to present his concerns, and Capt. Martin ignored the conditions. ECF No. 23, at 2. Lt. Brown made multiple rounds while Harold was confined in HTE-17 and witnessed the conditions. *Id.* Harold also attempted to speak to her through glass, but she walked away. *Id.* Lt. Chatman, gave the order to have Harold placed in HTE-17. *Id.* Lt. Chatman visited HTE-17 on

several occasions, and Harold attempted to speak with him. *Id.* Lt. Chatman made comments such as "don't come on suicide watch and you won't have such problems." *Id.* A nurse in charge on 8/19/19 and nurse Shay upheld Lt. Chatman's orders of placing Harold in HTE-17 by placing his order in medical notes and ignoring the conditions. *Id.* Deputy Brock, a transporting officer, witnessed the conditions, and Harold complained to him about the conditions, but it is unclear if Deputy Brock ever made official rounds or ever guarded HTE-17. *See* ECF Nos. 1; 9.

### 2. Medical Issues after August 2019

In Harold's Amended Complaint, he describes not using the bathroom to defecate for nine days while in HTE-17 in August 2019. ECF No. 23, at 3. Upon leaving HTE-17 and arriving at a completely different facility, Harold complained to a nurse that he had tried to use the bathroom twice and could not. *Id.* She provided him with milk of magnesia. *Id.* Harold proceeded to have a bowel movement later that night which caused him severe pain and discomfort. *Id.* He returned to a normal pattern of using the restroom for approximately two months until the middle of October 2019, when he alleges he started defecating only once every 2–3 days. *Id.* From October 2 to January 6, 2020, he alleges his bowel movements varied, sometimes going every two to four days. *Id.* During this time, he received milk of magnesia upon request. *Id.* In February, after having fairly regular bowel movements for a month, Harold could not pass a bowel movement for six days. *Id.* Harold states that "by conducting . . . exercise and drinking plenty of water plaintiff [believes] such is why I was having bowel movements one time a day or every two days." *Id.* On March 1, 2020, he made a sick call stating he experienced severe constipation and a bad cough. *Id.* at 4. Milk of magnesia no longer helped his discomfort going to the bathroom. *Id.* When he saw a doctor on March 12, 2020, the doctor stated that Harold's bowel area was hard and told

Harold he would suffer with constipation issues the rest of his life. *Id.* The doctor prescribed "colace and dukolax" which Harold still takes. *Id.*

**B.  Medical Records**

Harold's medical records only include those from Rayburn Correctional Center where he was transferred after being in HTE-17 at the Tangipahoa Parish jail.  Upon arrival from Tangipahoa Parish jail to Rayburn Correctional Center on August 28, 2019, the date Harold alleges his nine days in HTE-17 ended, his medical screening form indicates an abrasion on his left cheek.  The form notes that Harold was hit by TPSO Deputy on left side of face, and Harold suffers from minor pain.  The form also notes that Harold has a complete retinal detachment in his left eye with the date 6/21/2010 written near this notation.  There is no suggestion that his eye injury resulted from confinement in HTE-17 in the medial records, complaints, or Harold's *Spears* testimony.

On March 1, 2020, Harold requested treatment for a cold, but also complained of constipation and not having a bowel movement for the past six or seven days.  The medical staff prescribed him milk of magnesia of which he received two doses on March 1, 2020.  On March 12, 2020, Harold's physical reported constipation.  He was prescribed Colace for ten months and Dulcolax for ten months.  On May 19, 2020, Harold submitted a medical treatment request form for constipation, complaining he had not passed a bowel movement in six days.  The treatment included milk of magnesia and an increase in fluids, and follow-up in 12 hours if needed.

On June 25, 2020, Harold's physical included a report of constipation and a plan for a FOBT (fecal occult blood test) three times and to return to the clinic in one month.  On August 27, 2020, Harold's physical reported that he had constipation and abdominal pain, and the treatment plan was a "h. pylori" test and orders abdominal x-ray.   On August 30, 2020, Harold requested medical treatment for ongoing issues with abdominal pain.  He complained that he had been

presenting this matter to medical personnel since May 19, 2020, and that the pain had grown severely worse and unbearable. He requested immediate treatment. The medical staff notes that "hypyloric" test is scheduled for the next day, abdominal x-ray is pending, and that Harold denied nausea or vomiting. The medical staff wrote a standing order for Maalox. A follow-up appointment was scheduled for September 28, 2020. Harold received results of the H. pylori test from LabCorp on September 8, 2020.

### C. *Spears* **Hearing Testimony**

Harold confirmed many of the details above in his *Spears* hearing. He explained that he was placed in HTE-17 when he told Detective Pitman that he was seriously pondering hurting someone after his mother died. Harold claims he heard Detective Pitman tell Lt. Chatman that Harold was suicidal, and it was Lt. Chatman, as Director of Security and booking area, who gave the order to place Harold in HTE-17 starting on August 19, 2019. Harold described Lt. Chatman talking to him in HTE-17 on multiple occasions, and "making amusing statements and being hilarious about it [HTE-17]."

Harold stated the cell was 5'x5' with no mattresses, no drinking water, and only a hole in the floor for a bathroom which was only flushed at 6 a.m. and 6 p.m., creating noxious fumes. Harold stated the placement of suicidal and homicidal individuals in the same cell is against DOC policy which he asserts states these individuals are to be placed alone in separate cells.

He reiterated the incident with Deputy Brock which led to the excessive force claim against the Deputy. Harold stated he was complaining loudly at the door about the officials adding another individual to the cell because he was frustrated. Deputy Brock grabbed him, punched the left side of his face, eventually knocked Harold down, and sprayed him in the face with chemical spray while another office held him down. Harold filed an administrative complaint, which he attached

to his original complaint, but he did not receive any response.  He initiated this complaint after he

learned of his constipation issues, from which he still suffers abdominal pain and takes medication.

### D.  **Defendant TPSO Motions to Dismiss**

Defendant TPSO filed two Motions to Dismiss which are nearly identical.  *See* ECF Nos.

27, 31.  In both Motions, TPSO argues that the TPSO must be dismissed as a defendant in

accordance with well-settled law in Louisiana that a parish sheriff's office does not possess

capacity to be sued under Louisiana law.  As addressed below, Fed. R. Civ. P. 17(b)(3) directs

federal courts to look to the state law in which they sit to determine whether an entity is capable

of being sued, and TPSO does not possess capacity to be sued.  It should be dismissed.

### E.  **Plaintiff's Motions to Amend Complaint**

Plaintiff Harold currently has two pending Motions for Leave to Amend his Complaint.

*See* ECF Nos. 32; 33.  In his first Motion, he requests to replace the Tangipahoa Sheriff's Office

with the Tangipahoa Parish Jail.  ECF No. 32, at 1.  In his second Motion, he requests to add the

following Defendants: Captain Heith Martin, Lt. Sherty Brown, Lt. Richard Chatman, and Deputy

Charles Brock, all of whom are employed by the Tangipahoa Parish jail (ECF No. 33, at 1) and

already named as defendants.  ECF Nos. 1; 23.

## II.    **LEGAL STANDARDS**

### A.  **Statutorily Required Screening**

As soon as practicable after docketing, the court must review a prisoner's[1] § 1983

complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a

---

[1] Plaintiff Harold called the court stating he was no longer incarcerated; however, Harold has not filed a change of address on the record and was incarcerated at the time of filing.  Courts treat plaintiff as a "prisoner" and apply statutory screening if plaintiff was a prisoner at the time of filing.  *See, e.g.*, *Moore v. United States Prob.*, No. 1:16CV148, No. 3:16CV279, No. 3:16CV280, 2017 U.S. Dist. LEXIS 58304, at *1 n.1 (N.D. Miss. Apr. 17, 2017) ("Although Plaintiff is now on probation, he was incarcerated at the time of the filing of his Complaints, and thus, § 1915A applies.").

claim.[2]  A prisoner's *in forma pauperis* complaint may be dismissed *sua sponte* at any time if the court determines that the complaint is frivolous or malicious or fails to state a claim on which relief may be granted.[3]  A claim is frivolous if it "lacks an arguable basis in law or fact."[4]  A claim lacks an arguable basis in law if it is "'based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"[5]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[6]  A court may not dismiss a claim simply because the facts are "unlikely."[7]  A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[8]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably run afoul" of the other.[9]  If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[10]  "When a complaint raises an arguable question of law which the district court

---

[2] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).

[3] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); 42 U.S.C. § 1997e(c)(1); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[4] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[5] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[6] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (citation omitted).

[7] *Id.*

[8] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[9] *See also Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).

[10] *Id.*.

ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[11]

### B.  Motion to Dismiss under Rule 12(b)(6)

The Supreme Court clarified the standard for a Rule 12(b)(6) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is *plausible* on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[12]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[13]  "Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim."[14]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[15]  The court may consider not only the allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice.[16]

---

[11] *Id.*

[12] *Bell Atl.*, 550 U.S. at 555, 570.

[13] *Iqbal,* 556 U.S. at 678.

[14] *Roy v. Cobb*, No. 20-0167, 2020 WL 2045791, at *2 (W.D. La. April 7, 2020) (citing *Bell Atl.*, 550 U.S. at 556).

[15] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted); *see also SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Commercial Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944–45 (5th Cir. 2018) (holding conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).

[16] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (stating that a court may rely on the complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[17]

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.[18] A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.[19] The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."[20] The court must also "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'"[21]

### C. The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[22] The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[23] "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[24] The information elicited at such an evidentiary hearing is in the nature of an amended

---

[17] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).

[18] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (citation omitted) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

[19] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

[20] *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).

[21] *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[22] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

[23] *Id.*

[24] *Davis v. Scott*, 157 F.3d 1003, 1005–06 (1998).

complaint or a more definite statement under Rule 12(e).[25] "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[26]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.[27] "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing."[28] Medical records of sick calls, examinations, diagnoses, and medications may, however, rebut allegations of deliberate indifference.[29]

## D. **Motion to Amend Complaint**

The Court has not yet issued a Rule 16 Scheduling Order. Thus, Plaintiff's request for leave to amend is governed by Fed. R. Civ. P. 15(a) rather than the more stringent good cause requirements of Fed. R. Civ. P. 16(b).[30]

Under Rule 15(a)(2), the "court should freely give leave [to amend] when justice so requires."[31] The five relevant considerations for examination by the court in determining whether to grant leave to amend a complaint are: (1) undue delay; (2) bad faith or dilatory motive;

---

[25] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990) (citation omitted).

[26] *Spears*, 766 F.2d at 182.

[27] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).

[28] *Id.* (citing *Wilson*, 926 F.2d at 482; *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990)).

[29] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003))).

[30] *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535-36 (5th Cir. 2003) (Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired and allows modification only for good cause and with the judge's consent; Rule 15(a)'s more liberal standard applies to the decision to grant or deny leave only after the movant demonstrates good cause to modify the scheduling order) (citing Fed. R. Civ. P. 16(b)).

[31] Fed. R. Civ. P. 15(a)(2). Denial of leave to amend is reviewed for abuse of discretion. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1173–74 (5th Cir. 2006). A district court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility. *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citation omitted).

(3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[32]  Given Rule 15(a)'s "bias in favor of granting leave to amend,'" absent a "substantial reason," the court's discretion "is not broad enough to permit denial."[33]

## III.   LAW AND ANALYSIS

### A.  Required Elements of § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[34]

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[35]  Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[36]  A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;

(2) that occurred under color of state law; and

(3) was caused by a state actor.[37]

---

[32] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (*citing Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

[33] *Id.* at 595 (citation omitted); *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (citing *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)).

[34] 42 U.S.C. § 1983.

[35] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).

[36] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[37] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

To hold a defendant personally liable under § 1983, a plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the [defendant] and the alleged constitutional violation."[38]

## B.  Failure to Exhaust Administrative Remedies

While Plaintiff produced to the court his administrative complaint (*see* ECF No. 1, at 5–6) and alleges he never received a response, the court does not need to determine at this time whether he failed to exhaust his administrative remedies in accordance with 42 U.S.C. § 1997e(a).  Failure to exhaust is an affirmative defense and is not a proper basis for *sua sponte* dismissal after service and answer.[39]

## C.  No Liability of Tangipahoa Parish Sheriff's Office or Tangipahoa Parish Jail

Plaintiff named the Tangipahoa Parish Sheriff's Office as a defendant and seeks to amend his complaint to replace Tangipahoa Parish Sheriff's Office with the Tangipahoa Parish Jail.

An entity's capacity to be sued is determined by reference to the law of the state in which the district court sits.  Fed. R. Civ. P. 17(b)(3).  Louisiana divides the responsibility for its parish jails.  The parish is charged with its jails' physical maintenance, pursuant to La. Rev. Stat. § 15:702, and the sheriff of each parish has the duty to administer and operate the jails.  La. Rev. Stat. § 15:704.  The office of the sheriff is a constitutionally created office in Louisiana, existing separately from the parish government.[40]  To possess capacity to be sued under Louisiana law, an

---

[38] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006).

[39] *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *e.g., Hicks v. Garcia*, 372 F. App'x 557, 557–58 (5th Cir. 2010); *see also Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002) (stating that exhaustion of administrative remedies is now required for all actions brought with respect to prison conditions whether under § 1983 or other federal law); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (holding that an inmate must exhaust available administrative remedies even if administrative remedy does not provide requested relief).

[40] La. Const. art. 5 § 27; *see Langley v. City of Monroe*, 22-483 (La. App. 2d 6/19/91), 582 So. 2d 367, 368 (holding that the parish police jury, or government, could not be liable for injuries attributed to the sheriff).

entity must qualify as a "juridical person," which is defined as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24.

Section 1983 imposes liability on any "person" who violates someone's constitutional rights under color of law.[41] "[A] sheriff's office [under Louisiana state law] is not a legal entity capable of being sued;" [42] therefore, it cannot be sued under federal law. Sheriff's offices are "part[] of the greater corporate body politic or juridical entity, i.e., the city itself, are not autonomous or self-governing legal entities, and therefore do not possess the capacity to be sued."[43] In Louisiana, jail facilities are not "legally empowered to do" anything independently of either the respective parish officials or the parish sheriff.[44] Further, under federal law, a county or parish prison facility simply is not recognized as a "person" within the meaning of the statute.[45] Thus, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term."[46]

---

[41] 42 U.S.C. § 1983; *see generally Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989) (holding that state officials are not "persons" acting in their official capacities under § 1983).

[42] *Cozzo v. Tangipahoa Par. Counsel*, 279 F.3d 273, 283 (5th Cir. 2002) (citing *Porche v. St. Tammany Par. Sheriff's Office*, 67 F. Supp. 2d 631, 635 (E.D. La. 1999) ("The law of Louisiana affords no legal status to the Parish Sheriff's Department wherein said department can sue or be sued, such status being reserved for the Sheriff . . ."); *Urban Housing of Am., Inc. La. v. City of Shreveport*, No. 09-0317, 2013 WL 587894, at *4 (W.D. La. Feb. 13, 2013) (citations omitted) (citing multiple cases as examples and stating "Louisiana courts have consistently held that city councils, parish sheriff's offices, and city permit offices are not separate government units with the capacity to sue or be sued."); *Haywood v. Gusman*, No. 06-3517, 2008 WL 516714, at *3 (E.D. La. Feb. 26, 2008) (citations omitted).

[43] *Urban Housing*, 2013 WL 587894, at *4.

[44] *See Roberts v. Sewerage & Water Bd.*, 92-2048 (La. 03/21/94), 634 So. 2d 341, 347.

[45] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. 2008)) (citing *United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3d Cir. 1973)) (adopting report and recommendation; *Cullen v. DuPage Cty.*, No. 99-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 13, 1999); *Whitley v. Westchester Cty. Corr. Facility Admin.*, No. 97-0420, 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook Cty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw Cty. Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982).

[46] *Douglas*, 567 F. Supp. 2d at 892; *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Par. Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, at *4 (E.D. La. Aug, 10, 2015).

For these reasons, Plaintiff's claims under § 1983 against the Tangipahoa Parish Sheriff's Office must be dismissed as frivolous and/or failure to state a claim upon which relief can be granted (28 U.S.C. § 1915(e)(2), § 1915A(b); 42 U.S.C. § 1997e(c)(1)), and his request for leave to amend to substitute the Tangipahoa Parish jail in its place must be denied as futile.

### D. __No Excessive Force Claim Against Deputy Brock for *de minimis* injury__

In order to state a claim for excessive force against Deputy Brock, Plaintiff must allege more than *de minimis* injury from the altercation or excessive force.[47]   In this case, Harold identifies his injury as a temporarily bruised face and pain from the chemical spray.  Consistent with his testimony, his medical records from Rayburn Correctional Center on August 28, 2019 after leaving HTE-17 indicate an abrasion on his left cheek and minor pain.  Neither Plaintiff not his medical records indicate any other physical injury from the altercation.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides that prisoners are barred from recovering compensatory damages for mental or emotional injuries "unless there is a prior showing of physical injury . . . ."[48]  The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant.[49]   A plaintiff is not entitled to compensatory damages without the required physical injury.[50]  Even if Plaintiff's factual allegations were sufficient to

---

[47] *See generally Wilkins v. Gaddy*, 559 U.S. 34 (2010) (overturning lower court decision and finding injuries from officer's beating inmate consisting of bruised heel, lower back pain, increased blood pressure, migraine headaches, dizziness, psychological trauma, and mental anguish to be more than *de minimis*).

[48] 42 U.S.C. § 1997e(e); *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997); *Crawford-el v. Britton*, 523 U.S. 574, 596 (1998).

[49] *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Siglar*, 112 F.3d at 193).

[50] *See Siglar*, 112 F.3d at 193 (applying § 1997e(e)'s physical injury requirement to Eighth Amendment claims and holding that the statutory physical injury requirement is coextensive with Eighth Amendment's physical injury test; ruling that a sore and bruised ear lasting three days *de minimis* injury); *Alexander v. Tippah Cty.*, 351 F.3d 626, 627–31 (5th Cir. 2003) (holding that vomiting and nausea from exposure to build up of feces and urine in backed-up drain pipe they were forced to use was no more than a *de minimis* physical injury); *Herman v. Holiday*, 238 F.3d 660, 665–66 (5th Cir. 2001) (finding fear of contracting future illness from mosquito infested facility, insufficient hot water, cold food, unsanitary eating utensils, cesspool near residential entrance and failure to provide loaner clothes on laundry day cannot transform prisoner's claim for mental and emotional damages into an independent category of damages to avoid bar of § 1997e(e)'s requirement for physical injury; *Harper*, 174 F.3d at 719 (applying § 1997e(e)'s physical

state a claim against Deputy Brock for excessive force, he cannot establish entitlement to proceed in this case because he lacks more than a *de minimis* injury and the PLRA precludes recovery absent the required physical injury.

> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] de minimis, would . . . require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).[51]

Injuries that result in long-term or chronic conditions suffice,[52] but temporary pain is insufficient to satisfy this requirement.[53]

The temporary facial abrasion and pain from chemical spray is the equivalent of short-term, temporary pain that is insufficient to exceed the *de minimis* injury requirement. Accordingly, the allegations fall short of the physical injury required to recover on a § 1983 claim under the parameters of § 1997e(e). Thus, Harold's excessive force claim against Deputy Brock does not survive review under 28 U.S.C. § 1915(e)(2), 1915A(b), and 42 U.S.C. § 1997e(c)(1).

### E. No Claim against Deputy Brock for Verbal Threats

Harold also alleges that Deputy Charles Brock verbally threatened Harold's relatives while transferring him from Tangipahoa Parish prison to Rayburn Correctional Center on August 28,

---

injury requirement to bar psychological damages absent allegation of more than *de minimis* physical injury in § 1983 claim alleging Eighth Amendment violation).

[51] *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).

[52] *See Payne v. Dickerson*, 334 F. App'x 629, 631 (5th Cir. 2009) (citing *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.1999) (chronic migraines after head injury from excessive force sufficient).

[53] *Sublet v. Million*, 451 F. App'x 458, 459 (5th Cir. 2011) (stating temporary pain stemming from numbness and tenderness in left hand and arm insufficient to establish more than *de minimis* injury); *see also Brown v. Hubert*, No. 8-219, 2009 WL 113398, at *4 (M.D. La. Jan. 15, 2009) (dismissing prisoner's excessive force claim due to no skin abrasion, redness, drainage or other side effects 4 days after allegedly being repeatedly sprayed and locked in a cell by multiple officers).

2019. ECF No. 1, at 4. Harold cannot recover for verbal threats made by Deputy Brock, as "verbal threats, name calling, and threatening gestures by prison guards do not amount to a constitutional violation."[54] "[T]he mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations."[55] For these reasons, any claim Harold is making against Deputy Brock on the basis of verbal threats must be dismissed under 28 U.S.C. § 1915(e)(2) and 1915A(b).

### F. Eighth Amendment Conditions of Confinement Claims

#### 1. The Conditions in HTE-17 Are Contrary to Evolving Standards of Decency

The Constitution does not require custodial inmates be housed in comfortable prisons, but the Eighth Amendment's prohibition against cruel and unusual punishment requires prisoners to receive "humane conditions of confinement" and adequate food, shelter, clothing, and medical care.[56] To establish a conditions of confinement claim under the Eighth Amendment, Plaintiff must establish: (1) that the deprivation was sufficiently serious and (2) that the prison official possessed a sufficiently culpable state of mind.[57] Sufficiently serious act or omission must result in denial of the "minimal civilized measure of life's necessities."[58] For a failure to prevent harm claim, an inmate must show that the conditions posed a substantial risk of serious harm.[59] The second requirement, the culpable state of mind, necessitates a finding that the official(s) acted with

---

[54] *Watson v. Winborn*, No. 02-10984, 2003 WL 21108479, at *1 (5th Cir. Apr. 21, 2003) (affirming district court determination that plaintiff had no actionable claim for alleged verbal threats by prison guards) (citation omitted); *Calhoun v. Hargrove*,

[55] *Robinson v. Stephens*, No.6:14cv701, 2017 WL 4112363, at *11 (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.3 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)) ("The use of words, no matter how violent, does not comprise a section 1983 violation." (citation omitted)), *report and recommendation adopted by* 2017 WL 4101676 (E.D. Tex. Sept. 14, 2017).

[56] *Herman*, 238 F.3d at 664 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)) (internal quotations omitted).

[57] *Id.* (citing *Farmer*, 511 U.S. at 834).

[58] *Farmer*, 511 U.S. at 834.

[59] *Id.*

deliberate indifference to inmate health and safety.[60]  Deliberate indifference requires a showing that the defendant officials "(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."[61]

"The Supreme Court has made clear that the standards against which a court measures prison conditions are 'the evolving standards of decency that mark the progress of a maturing society' and not the standards in effect during the time of the drafting of the Eighth Amendment."[62] The objective factor prong requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.[63]

The Court employs a "totality of the circumstances" test to assess Eighth Amendment claims based on prison conditions.[64]  There is clearly a point beyond which one's conditions of confinement are so egregious as to render them unconstitutional.[65]  Other conditions of confinement may not establish a violation individually, but may do so in combination with other conditions when those combined conditions have a mutually enforcing effect that produces the deprivation of a single identifiable human need, such as food, warmth, or exercise, for example a low cell temperature at night combined with a failure to issue blankets.[66]

---

[60] *Herman*, 238 F.3d at 664 (citing *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1990)).

[61] *Id.* (citing *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)).

[62] *Gates v. Cook*, 376 F.3d 323, 332–33 (5th Cir. 2004) (quoting *Estelle v. Gamble*, 429 US. 97, 102 (1976)).

[63] *Helling v. McKinney*, 509 U.S. 25, 36 (1993) ("In other words, the prisoner must show that the risk of which he complains is not one today's society chooses to tolerate.").

[64] *Rhodes v. Chapman*, 452 U.S. 337, 347, 363 (1981) (Prison "[c]onditions, . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities").

[65] *See, e.g.*, *Gates,* 376 F.3d at 338 (holding that confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional); *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (stating that continual conditions of "filthy, sometimes feces-smeared cells" may be unconstitutional).

[66] *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citations omitted).

"'[A]bsent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment.'"[67]  Likewise, the Constitution does not require daily, or even weekly showers.[68]  Nor does the mere denial of exercise or outdoor recreation arise to the level of an Eighth Amendment violation.[69]  Even being forced to live in a filthy or unsanitary cell does not automatically violate the Constitution.[70]  "A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."[71]  Thus, appellate courts reject § 1983 claims when the length of confinement in even filthy, overcrowded cells is of short duration.[72]  Courts in

---

[67] *Baqer v. St. Tammany Par. Gov't*, No. 20-980-WBV-JCW, 2020 WL 1820040, at *12 (E.D. La. Apr. 11, 2020) (quoting *Chavera v. Allison*, No. 1:08cv256-JMR, 2009 WL 1011157, at *5 (S.D. Miss. Apr. 15, 2009) (citing *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, No. 2:07cv167-MTP, 2008 WL 53269, at *2 (S.D. Miss. Jan. 2, 2008); *Robertson v. Coahoma Cty.*, No. 2:07CV78-SA-SAA, 2008 WL 3334091, at *5 (N.D. Miss. Aug. 6, 2008)).

[68] *See Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding that denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period do not constitute cruel and unusual punishment); *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment.").

[69] A prisoner has no protected liberty interest in specific type or any particular amount of time of outdoor recreational opportunities, and the deprivation of exercise is not a per se constitutional violation.  *See Lewis v. Smith*, No. 00-31371, 2001 WL 1485821, at * 1 (5th Cir. Nov. 13, 2001) (citing *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982)).  In order to succeed on a claim of denial of exercise, the prisoner must show that the denial adversely affected his health.  *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977); *see also Hernandez v. Velasquez*, 522 F.3d 556, 560–61 (5th Cir. 2008) (granting summary judgment for defendants on claim based on denial of outdoor and out of cell exercise for 13 months where there was no showing of "substantial risk of serious harm" as plaintiff did not "clearly evince" a serious medical need).

[70] *Taylor v. Stevens*, 946 F.3d 211, 219–20 (5th Cir. 2019).

[71] *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) (addressing unconstitutional punitive isolation of 4 to 11 prisoners crowded into 8' x 10' windowless cells for indeterminate time periods, with no furniture other than a source of water, a toilet that could only be flushed from outside of the cell, and mattresses that were given each night and removed each morning).

[72] *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (holding that three days in a filthy crisis management cell with blood on walls and excrement and old food on the floor was insufficient to objectively demonstrate a sufficiently extreme deprivation, particularly when plaintiff was given cleaning supplies) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Shakka v. Smith*, 71 F.3d 162, 167–68 (4th Cir. 1995) (holding no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (noting the intolerable conditions lasted not more than 24 hours and, therefore, no constitutional violation was found); *Daigre v. Maggio*, 719 F.2d 1310, 1312–13 (5th Cir. 1983) (holding 10-day administrative lockdown that subjected prisoners to "dirty and filthy" mattresses, laundered blankets at most once a week or even up to three weeks, and no soap to wash hands with between using the toilet and eating meals was not sufficient to establish constitutional deprivation where some measure of hygiene was provided by available water and utensils at meals)).

this district[73] and elsewhere[74] likewise regularly reject § 1983 claims based on prison conditions after assessing the combination of the particular conditions at issue and length of confinement in those conditions.

Only in extreme circumstances do unsanitary conditions rise to the level of a constitutional deprivation. For instance, in *Taylor v. Stevens*, 946 F.3d 211 (5th Cir. 2019), *aff'd in part and vacated on other grounds by Taylor v. Riojas*, 141 S. Ct. 52 (2020), the Fifth Circuit recognized that a prisoner forced to live in two squalid cells for six days articulated an Eighth Amendment claim. In *Taylor*, the first cell's entire surface—floors, ceilings, windows, walls and water faucet—was covered with massive amounts of feces and emitted a strong fecal odor. *Id.* at 218–19. The second cell was extremely cold and had no water fountain, no bunk, and no toilet—only a drain in the floor that was clogged and smelled strongly of ammonia which plaintiff refused to use because it would spill onto the floor where he had to sleep. *Id.* While being denied facilities (or even a functional drain) within which to urinate, officers refused to escort the plaintiff to the bathroom for a 24-hour period.[75] On those facts, the Fifth Circuit recognized that the plaintiff stated an Eighth Amendment claim, even with the relatively short 6-day duration. *Id.* at 220–21.

---

[73] *See, e.g.*, *Magee v. Crowe*, No. 09-3142, 2010 WL 630011, at *8–9 (E.D. La. Feb. 19, 2010) (stating that a "short-term sanitation . . . problem, although admittedly unpleasant, does not amount to a constitutional violation" and holding that placement in isolation cell for 21 days with a hole in the floor for a toilet, which could only be flushed from outside and was flushed only once or twice a day, which backed up into the cell while prisoner was sleeping, and in which prisoner could only shower twice in those 21 days, did not constitute an extreme deprivation).

[74] *See, e.g.*, *Crowley v. Austin*, No. 18-431, 2018 WL 3381494, at *3 (W.D. La. May 29, 2018) (holding that 3 days in holding cell without a bed, running water or toilet is not sufficient to rise to the level of a constitutional violation); *Duvall v. Burns*, No. 6:15cv564, 2016 WL 7664308, at *1, *5–7 (E.D. Tex. Oct. 24, 2016) (ruling that a weekend in a cell where inmate could not take a shower or flush the toilet, but was supplied drinking water with meals, failed to satisfy the objective component for an Eighth Amendment violation); *Eady v. Head*, No. 04-0648, 2006 WL 2663776 (W.D. Tex. Sept. 15, 2006) (holding two days without shower and exposure to the foul smell of a backed-up shower did not show deliberate indifference to the plaintiff's basic human needs).

[75] In ruling, the Fifth Circuit expressly noted that prison officials are not required "to provide a prisoner with a squeaky-clean toilet nor to escort him to the restroom whenever he wishes." *Taylor v. Stevens*, 946 F.3d 211, 225 n.20 (5th Cir. 2019). When, however, the plaintiff is refused a restroom for 24 hours and provided no other sanitary means to relieve himself, the situation is akin to similar circumstances in which the court has previously found violative of the Constitution. *Id.* (citing *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999)).

On writ of certiorari on the qualified immunity issue, the Supreme Court agreed that these horrendous conditions of confinement indeed violated the Eighth Amendment's prohibition on cruel and unusual punishment. *Taylor*, 141 S. Ct. at 53.[76]

Harold has alleged sufficient facts to state a plausible Eighth Amendment claim for unconstitutional conditions of confinement. Harold alleges that he lived in a 5' x 5' or 6' x 6' cell with five other inmates. He claims the bars covering the hole which was used as toilet were constantly covered with feces and urine, as well as the surrounding area, and describes how he could not use the hole to urinate for fear of getting feces on him, but had to urinate in one of the Styrofoam cups he received for water and pour it into the hole. Harold describes not passing a bowel movement for nine days due to the unsanitary environment, and fear of getting feces on him when he used the hole. He alleges the stench created noxious fumes from the feces and urine surrounding the toilet hole and from the hole only being flushed every 12 hours. Harold was in the 6' x 6' or 5' x 5' cell with one other individual for three days, and five others for six days.

Based on these factual allegations, like the plaintiffs in *Taylor*, *Burnette*, *Palmer*, and *Harper*,[77] Harold has plausibly demonstrated an environment that is counter to evolving standards

---

[76] *See also Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (prisoners regularly forced to live in cells covered with "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles" established an Eighth Amendment violation); *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (prisoner forced to sleep on a wet mattress "in filthy water contaminated with human waste" for ten months amounted to a violation of the Eighth Amendment); *Little v. Keirsey*, 69 F.3d 536, at *1, *5 (5th Cir. 1995) (holding that plaintiff stated claim for inhumane confinement when he alleged that, for 18 days, he was confined to a cell where the floor was constantly covered in water, urine and excrement from an overflowing toilet in his cell; lack of windows and ventilation caused stench, which inhibited him from eating and made him vomit, his shoes were soaked from the foul mixture, and he developed a body rash from the extreme heat).

[77] *Palmer*, 193 F.3d at 353 (finding 49 prisoners forced to spend night on 20' x 30' work field, without being allowed to leave the area to defecate and urinate, in cold weather, without blankets, jackets or shelter stated Eighth Amendment claim); *Burnette v. Bureau of Prisons*, 277 F. App'x 329, 331 (5th Cir. 2007) (holding that prisoner stated an Eighth Amendment claim based on being required to share a garbage bag as toilet with mentally unstable inmate; officers sealed cell door with tape and refused to remove bag, which emitted odor and leaked sewerage in cell); *Harper v. Showers*, 174 F.3d 716, 719–20 (5th Cir. 1999) (reversing dismissal of claim for injunctive relief based on allegations that weekly cell moves, often into cells that are filthy with feces-smeared in them next to psychiatric patients who scream, beat on the metal toilets, short out the power, flood the cells, throw feces and light fires as such conduct, depending on the facts, may qualify as deprivations of life's basic needs in violation of the Eighth Amendment).

of decency under the Eighth Amendment, as necessary to state a claim for unconstitutional conditions of confinement.

### 2. Harold's Alleged Injuries are *De Minimis*

A prisoner's exposure to horrendous conditions of confinement alone, however, is insufficient to proceed on a § 1983 claim. As discussed above in Section III(D), Harold must also allege that the unlawful practices or conditions caused him harm or injury.[78] Again, the Prison Litigation Reform Act requires a plaintiff to sustain a physical injury that is more than *de minimis*. Vomiting or nausea caused by exposure to odor and a floor covered with raw sewage, which has no lasting effect and does not require medical attention, is insufficient to establish the required "injury" under the PLRA.[79] However, chronic issues caused by allegedly unconstitutional conduct will exceed the *de minimis* injury requirement of § 1997e(e).[80]

Harold asserts that he suffered constipation issues as a result of his confinement in the holding tank. Courts have consistently recognized that constipation, without further complications and even combined with other circumstances like abdominal pain, pulled stomach muscle, or chest pains, is only *de minimis* injury.[81] Harold's complaint, medical records, and testimony alleges

---

[78] *Roy v. Cobb*, 2020 WL 2045791, at *3 (W.D. La. Apr. 7, 2020) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992) (recognizing that, to have standing, a plaintiff must have suffered an injury in fact that is "actual or imminent, not conjectural or hypothetical.")).

[79] *Alexander*, 351 F.3d at 631.

[80] *See Payne v. Dickerson*, 334 F. App'x 629, 631 (5th Cir. 2009) (citing *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.1999) (chronic migraines after head injury from excessive force sufficient).

[81] *Roy*, 2020 WL 2045791, at *4. For a case involving further complications, see *Shirley v. Sternal*, No. 09-10045-Civ-Martinez, 2010 WL 6020684, at *10 (S.D. Fla. Aug. 30, 2010) (finding the plaintiff's allegations of weight loss, headaches, light-headedness, swollen legs, constipation, upset stomach, and nausea due to a diet too low in calories established more than a de minimis injury for purposes of § 1997e(e)). Tthe following cases found constipation as *de minimis* injury although the courts either did not address the time period or constipation lasting significantly less than a year. *See Wiethorn v. Valdez*, o. 7-896, 2007 WL 1888400, at *2 (N.D. Tex. June 29, 2007) (finding on failure to provide medical care claim that five weeks with treatment for constipation resulting in abdominal pains, difficulty sleeping, pulled stomach muscle, and ongoing pain for approximately one month was de minimis); Tsosie *v. Bureau of Prisons*, No. , 2012 WL 4484935, at *4 (M.D. Pa. Sept. 27, 2012) (citing case law that holds temporary discomfort of full bladder and mild constipation does not rise past the level of a de minimis injury); *Hardy v. Bennett*, No. 5:06-CT-3107-FL, 2008 WL 5640099, at *3 (E.D. N.C. Feb. 1, 2008) (holding high blood pressure, constipation, hemorrhoids, dry skin, and side and stomach cramps to be de minimis); *Wilson v. Johnson*, No. 2020 WL 3052530, at *19 (N.D. Fla. Mar. 13, 2020) (citing *Thompson v. Smith*, No. 18-11671, 2020 WL 1189387, at *9 (11th Cir. Mar. 12,

that, while he still suffers from constipation and is currently on medication, his constipation fluctuates with extended time periods where his condition subsides.  As Harold indicates, he was regular until October after receiving milk of magnesia on August 28, 2019 when he left HTE-17. He also claims he was fairly regular for a month in January to February, then his constipation grew worse in February.  He requested treatment for constipation once in March, May, and August, and the March, June, and August physical reports note that he complained of constipation issues. However, the only other complication reported is abdominal pain. In fact, neither he nor his medical records indicate any nausea or vomiting.[82]   While Plaintiff does allege intermittent episodes of constipation occurring over a year,[83] he does not alleger any complications arising from same and admits to intermittent periods of regularity.  Thus, his alleged injury from the conditions of confinement do not exceed the *de minimis* injury requirement of the PLRA.

### 3.  Some Defendants May Be Liable in Their Individual Capacities

Plaintiff Harold alleges Defendant Warden Heath Martin, Lt. Chetry Brown, Lt. Richard Chatman, and Deputy Charles Brock are liable in both their official and individual capacities. Should Plaintiff seek to amend his complaint to identify additional complications from his constipation or otherwise establish that he sustained more than *de minimis* injury, it is necessary to address whether such claims may be asserted against the defendants in their individual and/or official capacities.

---

2020) (discussing *Alexander v. Tippah Cty.,* 351 F.3d 626, 631 (5th Cir. 2003) (noting injuries not de minimis when attest to a routine discomfort associated with confinement)).

[82] *Stallworth v. Wilkins*, 802 F. App'x 435, 438 (11th Cir. 2020) (finding few stomach viruses, vomiting, fever, and constipation from eating off meal trays with black mold and mildew, and calling in sick three times more than *de minimis*).

[83] *See Preayer v. Ryan*, 2017 WL 2351601, at *4 (D. Ariz. May 31, 2017) (discussing *Alexander* and noting that the Fifth Circuit in that case implied that longer lasting effects may give rise to the above de minimis injury threshold and differentiating the present facts from cases noting dealing with no more than a few days).

In his Amended Complaint and *Spears* testimony, Harold claims Warden Martin made rounds twice and had two conversations with Harold allegedly telling Harold he should not have come to suicide watch.  Harold claims Lt. Brown had administrative decision-making over where prisoners are placed, suicide or homicide watch, and also made multiple rounds witnessing Harold in HTE-17.  Harold claims Lt. Chatman gave the order to place Harold in HTE-17, talked to Harold on several occasions while Harold was in the cell and made mocking comments towards Harold while in the cell.  Harold also testified that he heard a prison official tell Lt. Chatman that Harold was homicidal, and Lt. Chatman made the decision to place him on suicide watch in HTE-17.  Harold also stated Lt. Chatman made rounds to HTE-17 during his *Spears* hearing.  Harold does not allege that Deputy Charles Brock made rounds at HTE-17, but alleges Deputy Brock observed the conditions of the cell when transferring the inmates in and out of the cell, and Plaintiff spoke to him about the conditions on multiple occasions.  In liberally construing Plaintiff's complaint and *Spears* testimony, he alleges that Deputy Brock had duties related to HTE-17.

To be found liable, prison officials acting in a supervisory role must either (1) affirmatively participate in alleged acts that caused the constitutional deprivation or (2) implement unconstitutional policies.[84]  "There is no respondeat superior liability under section 1983."[85]  A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.[86]  "Official capacity suits generally represent another way of pleading an action against an entity of which an

---

[84] *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009).

[85] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008) (citation omitted); *Kohler v. Englade*, 470 F.3d 1104, 1114 (5th Cir. 2006).

[86] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x at 921 (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1993)); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

officer is an agent."[87]   In other words, an official capacity suit is essentially a claim against the local governmental body itself.  However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[88]

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[89]   Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.[90]

    As to Nurse Shay and the unnamed nurse in charge, Harold did not plead any involvement by either of them, except writing notes in the computer regarding his homicidal status.  He did not allege any conversation or interaction.  Thus, claims against Nurse Shay and the unidentified nurse should be dismissed.

    While Harold alleges the existence of a DOC policy for not housing suicidal or homicidal individuals together, he does not provide more than that conclusory allegation during his *Spears* hearing.  He further does not allege any policy regarding the overall conditions of HTE-17.  Thus, any official capacity claim should be dismissed at this time.  However, the previously listed Defendants, Martin, Brown, Chatman, and Brock allegedly made formal "rounds" or had duties

[87] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

[88] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations and quotation omitted).

[89] *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).

[90] *See, e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.

involving HTE-17 or were present at HTE-17, observed the conditions, and spoke with Harold regarding the conditions. These allegations suffice to state acclaim for individual capacity liability.[91]

## ORDER AND RECOMMENDATIONS

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Amend (ECF No. 33) is DENIED AS MOOT given that the defendants at issue are already named as parties in the Complaint and Amended Complaint (ECF Nos. 1, 23);

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (ECF No. 32) to substitute the Tangipahoa Parish Jail in place of the Tangipahoa Parish Sheriff's Office is DENIED as futile;

**IT IS RECOMMENDED** that Plaintiff's § 1983 claim against the Tangipahoa Parish Sheriff's Office be DISMISSED WITH PREJUDICE as the sheriff's office is not juridical persons capable of being sued under § 1983;

**IT IS FURTHER RECOMMENDED** that Plaintiff's § 1983 claim against Nurse Shay and unidentified Nurse in charge be DISMISSED WITH PREJUDICE for failure to allege facts demonstrating their official or individual liability;

**IT IS FURTHER RECOMMENDED** that Plaintiff's § 1983 excessive force claim against Deputy Brock be DISMISSED WITH PREJUDICE as Plaintiff failed to demonstrate more than a *de minimis* injury;

---

[91] *Salcido ex. rel K.L. v. Harris Cty.*, No. H-15-2155, 2018 WL 4690276, at * (S.D. Tex. Sept. 28, 2018) (finding summary judgment inappropriate against plaintiff when supervisor Defendants gave orders for officials to tie and hold inmate in potentially unconstitutional manner).

**IT IS FURTHER RECOMMENDED** that Plaintiff's § 1983 conditions of confinement claim against Warden Heath Martin, Lt. Richard Chatman, Lt. Chetry Brown and Deputy Brock in their official and individual capacities be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[92]

New Orleans, Louisiana, this ____18th____ day of June, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[92]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).